ROBERTA L. STEELE, CA Bar No. 188198
rsteel@gdblegal.com
LAURA L. HO, CA Bar No. 173179
lho@gdblegal.com
JOSEPH E. JARAMILLO, CA Bar No. 178566
jjaramillo@gdblegal.com
GOLDSTEIN, DEMCHAK, BALLER,
    BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510)  763-9800
(510)  835-1417 (fax)

Attorneys for Plaintiffs and the Class

*E-filing*

*ORIGINAL FILED*

*NOV 30 2007*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW SCHEID and MELTON MCCLANAHAN, JR., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FREMONT GENERAL CORPORATION, a corporation, FREMONT GENERAL CREDIT CORPORATION, a corporation, and FREMONT INVESTMENT & LOAN, a corporation,<br><br>Defendants. | **CLASS/COLLECTIVE ACTION**<br><br>Case No. CV7-06063 CRB<br><br>**COMPLAINT**<br><br>CLAIMS FOR UNPAID OVERTIME WAGES, MISSED MEAL PERIODS, REIMBURSEMENT OF BUSINESS EXPENSES, INACCURATE WAGE STATEMENTS, FAILURE TO PAY ALL WAGES DUE UPON DISCHARGE, LIQUIDATED DAMAGES, PENALTIES, AND ATTORNEYS FEES AND COSTS<br><br>**DEMAND FOR JURY TRIAL** |

12071-1

Plaintiffs Matthew Scheid and Melton McClanahan, Jr. ("Plaintiffs"), on behalf of themselves and all others similarly situated, complain and allege as follows:

## I.    **INTRODUCTION**

1.      Plaintiffs were employed by Defendants Fremont General Corporation, Fremont General Credit Corporation, and Fremont Investment & Loan (collectively "Fremont" or "Defendants") within the past four years as Account Executives, selling residential mortgage loans. They bring claims individually and as a collective action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 207, 216(b), seeking unpaid overtime compensation, liquidated damages (or, in the alternative, interest), and attorneys' fees and costs for Account Executives employed by Fremont in the state of California at any time since three years prior to the filing of this Complaint.

2.      This action is also brought as a class action, under Fed. R. Civ. P. 23(b)(3), on behalf of all other Account Executives formerly employed by Fremont in the state of California at any time since four years prior to the filing of this Complaint ("Account Executives" or "Class Members") for:  (1) unpaid overtime compensation, reimbursement of business expenses, missed meal periods, statutory penalties, interest, and attorneys' fees and costs, under California Labor Code §§ 203, 226, 226.7, 1194, 2802, California Code of Civil Procedure § 1021.5, and California Industrial Welfare Commission Occupational Wage Order ("Wage Order") No. 4-2001, 8 Cal. Code of Reg. § 11040; and, (2) specific enforcement of penalties and restitution of all benefits Fremont enjoyed from its failure to pay overtime compensation under both California state and federal law, its failure to provide off-duty meal breaks, its failure to provide accurate statements of hours worked, its failure to reimburse Account Executives for reasonably incurred business expenses, and its failure to pay all wages due upon discharge, under the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200-17208.

3.      The "Class Period" is designated as the time from four years prior to the filing of this Complaint through May 30, 2007, based upon the allegation that the violations of California's wage and hour laws and the UCL, as described more fully below, occurred from at least four years prior to the date Plaintiffs filed the Complaint in this action until May 2007.  During the Class Period, Fremont had a consistent policy of:  (1) permitting, encouraging, and/or requiring its Account Executives,

1

including Plaintiffs and Class Members, to work in excess of eight (8) hours per day and in excess of forty (40) hours per week without paying them overtime compensation as required by California state and/or federal wage and hour laws; (2) failing to furnish timely itemized statements accurately showing total hours worked and applicable hourly rates to Account Executives; (3) permitting, encouraging, and/or requiring their Account Executives, including Plaintiffs and Class Members, to work in excess of five hours per day without providing an off-duty meal break of at least one half hour and to work in excess of ten hours per day without taking a second off-duty meal break of at least one half hour; (4) denying reimbursement for business expenses reasonably incurred by Account Executives in the course of carrying out their job duties; (5) knowingly and intentionally failing to keep accurate payroll records showing the actual number of hours worked daily by Account Executives; and (6) willfully failing to pay compensation owing (including unpaid overtime) in a prompt and timely manner to Class Members whose employment with Fremont terminated.

4.    The "FLSA Liability Period" is designated as the time from three years prior to the filing of this Complaint through March 30, 2007, based upon the allegation that the violations of FLSA, as described more fully below, were ongoing from at least three years prior to the date Plaintiffs filed the Complaint until March 2007.  During the FLSA Liability Period, Fremont had a consistent policy of permitting, encouraging, and/or requiring their Account Executives, including Plaintiffs and Class Members, to work in excess of forty (40) hours per week without paying them overtime compensation as required by FLSA, and Fremont's failure to pay overtime has been willful and not in good faith.

5.    Fremont treated all of its Account Executives as exempt from the California and federal overtime pay requirements and have refused to pay Class Members overtime pay for overtime work, notwithstanding the fact that all such Account Executives were not exempt and were indeed entitled to overtime pay under California's wage and hour laws, including California Labor Code § 1194 and Wage Order No. 4-2001, and under federal law, Fair Labor Standards Act ("FLSA") 29 U.S.C § 201 et seq.  Account Executives are owed their back overtime pay, plus interest, and double the federal unpaid overtime (under FLSA and Business and Professions Code § 17202) to compensate class members for delay in receiving wages due.

6.      From November 2003 to March 2007, Fremont did not provide Account Executives proper meal periods, as required by California Labor Code §§ 226.7 and 512 and Wage Order No. 4-2001. Account Executives are owed an additional hour of pay at their regular rate for each day they were not provided lawful meal periods.

7.      Plaintiffs and Class Members were not exempt from California's overtime and meal period requirements or the overtime requirements of FLSA.

8.      From November 2003 to March 2007, Fremont failed to reimburse Account Executives for expenses reasonably incurred during the performance of their duties as Account Executives, in violation of California Labor Code § 2802. Each Account Executive is owed indemnification for such business expenses.

9.      From November 2003 to March 2007, Fremont did not furnish each of its Account Executives with timely itemized wage statements accurately showing total hours worked by each such Account Executive, as required by California Labor Code § 226. Each Account Executive is owed fifty dollars ($50) for the initial pay period in which Fremont failed to provide a statement showing total hours worked and one hundred dollars ($100) for each subsequent pay period, up to a total of four thousand dollars ($4000).

10.     Fremont has willfully failed and refused to timely pay wages due for overtime compensation and meal periods to former Account Executives at the conclusion of their employment with Fremont, entitling these former Account Executives to statutory penalties under California Labor Code §§ 201-203.

## II.      JURISDICTION

11.     This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million and Defendant Fremont General Corporation is a citizen of a different state than two-thirds or more of the proposed class.

12.     This Court also has jurisdiction over Plaintiffs' federal law claims pursuant to the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because the state law claims are so

related to the federal claims that they form part of the same case or controversy between Plaintiffs and Fremont.

### III.    VENUE

13.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in the County of Contra Costa within this District and this Division.  Fremont maintained offices, transacted business, had agents, and was found in Contra Costa County.  Plaintiffs and similarly situated Account Executives were employed by Fremont in Contra Costa County within this District and this Division.

14.    Pursuant to N.D. Cal. Local Rule 3-2(c) and (d), intradistrict assignment to the San Francisco/Oakland Division is proper because a substantial part of the events giving rise to claims presented in this Complaint occurred in the City of Concord, which is in the County of Contra Costa.

### IV.    PARTIES

**Plaintiffs**

15.    Class Representative Plaintiff Matthew Scheid resides in Santa Rosa, which is located in Sonoma County, California.  He was employed as an Account Executive by Fremont from September 2004 until in or about April 2007 in its Concord, California office.

16.    Class Representative Plaintiff Melton McClanahan, Jr. resides in Fairfield, which is located in Solano County, California.  He was employed as an Account Executive by Fremont from June 2004 until in or about March 2007 in its Concord, California office.

**Defendants**

17.    Defendant Fremont Investment & Loan is a California corporation, with a principal place of business in Brea, California.  Fremont Investment & Loan is wholly owned by Fremont General Credit Corporation, which is wholly owned by Fremont General Corporation.  Fremont Investment & Loan is a chartered bank that engaged in providing residential mortgage loans to borrowers through a network of mortgage brokers throughout the United States, including in California.  Fremont Investment & Loan employed Plaintiffs and similarly situated Class Members as Account Executives within California and Contra Costa County.  On or about March 5, 2007, Fremont Investment & Loan withdrew from the mortgage lending business.  Account Executives continued on

12071-1

4

COMPLAINT

Fremont Investment & Loan's payroll until on or about May 18, 2007 unless they secured employment elsewhere. Fremont Investment & Loan is a "joint employer" within the meaning of the FLSA because it had the power to hire and fire Account Executives, control their conditions of employment, determine their method and rate of payment, and maintain their employment records. Fremont Investment & Loan is also an "employer" within the meaning of California law because it employed Class Members, possessed the right to control and direct the activities of Class Members, and exercised control over the wages, hours, and working conditions of Class Members. On information and belief, a unity of interest and ownership between the Fremont Investment & Loan, Fremont General Credit Corporation, and Fremont General Corporation exists such that all three entities acted as a single employer of Class Members.

18.    Defendant Fremont General Credit Corporation is a California corporation, with a principal place of business in Brea, California. Fremont General Credit Corporation wholly owns Fremont Investment & Loan and is wholly owned by Fremont General Corporation. Fremont General engaged, through its subsidiary Fremont Investment & Loan, in providing residential mortgage loans to borrowers through mortgage brokers throughout the United States, including in California. Fremont General Credit Corporation is a "joint employer" within the meaning of the FLSA because, on information and belief, it had the power to hire and fire Account Executives, control their conditions of employment, determine their method and rate of payment, and maintain their employment records. Fremont General Credit Corporation is also an "employer" within the meaning of California law because, on information and belief, it employed and exercised control over the wages, hours, and working conditions of Class Members Class Members, and/or possessed the right to control and direct the activities of Class Members. On information and belief, Fremont General Credit Corporation controlled the employment decisions of its subsidiary, Fremont Investment & Loan. On information and belief, a unity of interest and ownership between Fremont Investment & Loan, Fremont General Credit Corporation, and Fremont General Corporation exists such that all three entities acted as a single employer of Class Members.

19.    Defendant Fremont General Corporation ("Fremont General") is a publicly owned corporation organized under the laws of the State of Nevada, with its headquarters in Santa Monica,

California. Fremont General is a financial services holding company. Fremont General is the parent company of Fremont Investment & Loan and operates in California through its wholly owned subsidiary Fremont Investment & Loan. Fremont General engaged, through its subsidiary Fremont Investment & Loan, in providing residential mortgage loans to borrowers through mortgage brokers throughout the United States, including in California. Fremont General is a "joint employer" within the meaning of the FLSA because, on information and belief, it had the power to hire and fire Account Executives, control their conditions of employment, determine their method and rate of payment, and maintain their employment records. Fremont General Corporation is also an "employer" within the meaning of California law because, on information and belief, it employed and exercised control over the wages, hours, and working conditions of Class Members Class Members, and/or possessed the right to control and direct the activities of Class Members. On information and belief, Fremont General Corporation controlled the employment decisions of its subsidiary, Fremont Investment & Loan. On information and belief, a unity of interest and ownership between Fremont Investment & Loan, Fremont General Credit Corporation, and Fremont General Corporation exists such that all three entities acted as a single employer of Class Members.

20.     On information and belief, each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Because they acted in concert and as "joint employers" within the meaning of FLSA and "employers" within the meaning of California law in failing to comply with the wage and hour laws complained of herein, Fremont General, Fremont General Credit Corporation, and Fremont Investment & Loan are collectively referred to herein as "Fremont."

## V.     **FACTUAL BACKGROUND**

21.     Fremont operated, and at all times during the Class Period and FLSA Liability Period, conducted business as a wholesale residential mortgage lender in Contra Costa County and throughout California. At its California locations, Fremont, among other things, originated, sold, transferred and assigned residential real estate mortgages. In the course of their employment with Fremont, Plaintiffs and the Class Members contacted non-Fremont mortgage brokers and informed them of Fremont's

1    residential loan products.  Mortgage brokers obtained applications for Fremont residential loans from

2    borrowers, and forwarded them to the Account Executives, who reviewed them for completeness and

3    submitted them to Fremont's underwriters, who approved or denied the applications.  During the loan

4    process, Account Executives would work with mortgage brokers to pre-qualify borrowers, process

5    applications, and sell residential real estate mortgages.  Account Executives incurred business expenses

6    in making Fremont's products known to mortgage brokers through, among other things, mailings, cell

7    phone calls, meals, and gifts.

8         22.    During the Class Period, Fremont required that Account Executives participate in an

9    initial training period after they were hired.  The training period included coursework at Fremont's

10   training facility in Brea, California, as well as on-the-job training in Fremont's offices.  During this

11   training period, Account Executives were compensated solely through a fixed "guarantee" that was

12   calculated based on each Account Executive's earnings in his or her prior employment.

13        23.    After the initial training period, Fremont compensated Account Executives through a

14   "draw on commissions" system.  Under this system, Account Executives were paid a fixed amount,

15   called a "draw," in the first pay period of each month in advance of earning commissions.  Fremont

16   calculated each Account Executive's earned commissions on a monthly basis, usually before the

17   second pay period, by applying a percentage to the value of the loans submitted and then adjusting that

18   figure for the ratio of loans that actually funded and for variance from Fremont's listed interest rates on

19   loans sold.  Fremont expected its Account Executives to earn commissions in excess of their draw each

20   month.  If an Account Executive's commissions exceeded the draw paid in the first pay period of each

21   month, then the draw was deducted from the commissions earned and the Account Executive was paid

22   the difference in the second pay period of each month.  If an Account Executive's commissions did not

23   exceed the draw, then he or she received a draw in the second pay period and the deficit between draws

24   and commissions was carried forward until the Account Executive's commissions exceeded his or her

25   draws.  An Account Executive's repeated failure to earn commissions that exceeded his or her draw

26   would eventually lead to termination.

27        24.    Throughout the FLSA Liability Period, Plaintiffs and the other former Account

28   Executives were covered by FLSA, which requires employers to pay employees one-and-one-half

1  times their normal hourly rate for hours worked in excess of forty (40) per week and provides for

2  liquidated damages in the amount of two times the unpaid overtime wages. Plaintiffs and the Class

3  Members should have been classified as "non-exempt" employees under FLSA. They were not paid

4  on a salary basis. Account Executives did not customarily or regularly perform any "exempt" duty.

5  They did not perform work which requires the exercise of discretion and independent judgment within

6  the meaning of those terms under federal law because their job duties did not entail significant

7  discretionary, decision-making or supervisory duties. Account Executives were engaged in non-

8  exempt "production" work, in that they performed the day-to-day activities of the production

9  department, namely, communication with mortgage brokers, selling loans, pre-qualifying borrowers,

10  and processing applications. Consequently, Account Executives, including Plaintiffs and Class

11  Members, did not fall within the "administrative, executive, or professional" exemptions from the

12  federal overtime requirements. Plaintiffs and Class Members were not exempt "commissioned

13  employees" under federal law as they were not employed in a retail or service establishment. See 29

14  C.F.R. § 779.317 (establishments lacking "retail" concept include banks, credit companies, finance

15  companies, and loan offices); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295 (1959) (there is no

16  concept of retail selling or servicing in these industries: banks, insurance companies, building and loan

17  associations, credit companies). Plaintiffs and the Class Members did not fall within any other

18  exemption from the obligation to pay overtime compensation under federal law.

19      25.    Plaintiffs and the other Class Members were covered by Wage Order No. 4-2001.

20  Throughout the Class Period, section 3 of the Wage Order, along with California Labor Code § 510,

21  required employers to pay employees one-and-one-half times their normal hourly rate for hours

22  worked in excess of eight (8) per day and in excess of forty (40) per week, and at twice the normal

23  hourly rate for hours worked in excess of twelve (12) per day and eight (8) on the seventh day worked

24  in a work week.

25      26.    Plaintiffs and the Class Members should have also been classified as "non-exempt"

26  employees for California overtime purposes during, at least, their initial training period. During the

27  training period, they were not engaged primarily in exempt duties nor did they perform work which

28  required the exercise of discretion and independent judgment within the meaning of those terms as set

12071-1

8

out in the Wage Order.  Their job duties did not entail significant discretionary, decision-making or supervisory duties. Account Executives were engaged in non-exempt classroom training and non-exempt "production" work, in that they performed the day-to-day activities of the production department, namely, communicating with mortgage brokers, selling loans, pre-qualifying borrowers, and processing applications.  Consequently, Account Executives, including Plaintiffs, did not fall within the "administrative, executive, or professional" exemptions from the overtime requirements. Account Executives did not fall within the "commission" sales exemption during their training period, as they did not earn more than fifty percent (50%) of their total compensation based upon a percentage of what they sold.  See Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 803-04 (1999).  For the period following their training period, any Account Executive who failed to earn two times the California minimum wage from commissions was also non-exempt.  Plaintiffs and the Class Members did not fall within any other exemption from the obligation to pay overtime compensation in the applicable wage orders.

27.     From at least four years prior to the filing of this Complaint until March 2007, Account Executives, including Plaintiffs, regularly worked in excess of five (5) hours a day without being provided a meal period of at least one half hour in which they were relieved of all duties.  They also regularly worked at least ten (10) hours a day without receiving a second meal period of at least one half hour in which they were relieved of all duties.  Fremont knew these facts, but still permitted, encouraged and/or required Account Executives to forego these meal periods.  Account Executives did not fall within any exemption to the meal period requirements of the California Labor Code and applicable wage orders.

28.     From at least four years prior to the filing of this Complaint until March 2007, Fremont failed to fully reimburse Plaintiffs and Class Members for business expenses reasonably incurred in the course of performing their duties as Account Executives in violation of California Labor Code § 2802.

29.     From at least four years prior to the filing of this Complaint until May 2007,  Fremont knowingly and intentionally failed to furnish each of their Account Executives with timely itemized wage statements accurately showing total hours worked, as required by California Labor Code § 226(a).  Fremont instructed and required Account Executives to fill in time cards each day showing

that they worked 7.5 hour workdays, regardless of how many hours they actually worked. Based on these time cards, Fremont recorded the total hours worked each day by each Account Executive as less than eight (8) hours per day even though Account Executives regularly worked in excess of eight (8) hours per day. As a result, the wage statements Fremont furnished did not reflect the actual number of hours worked each day by each Account Executive.

30.    From at least four years prior to the filing of this Complaint until March 2007, Fremont failed to keep accurate payroll records showing the actual number of hours worked daily by Account Executives. Fremont instructed and required Account Executives to record their hours worked as 7.5 hours per day even though Account Executives regularly worked in excess of eight (8) hours per day. As a result, Fremont's records did not reflect the actual number of hours worked each day by each Account Executive.

31.    From at least four years prior to the filing of this Complaint until May 2007, Fremont failed to pay all compensation due and owing to all former Account Executives at or about the time employment was terminated, as required by California Labor Code §§ 201 and 202.

32.    From at least four years prior to the filing of this Complaint until May 2007, Fremont violated the UCL by the violations of California law as described above, and violated the UCL by violating the federal overtime laws, as set forth in the FLSA, and as described above.

## VI.    COLLECTIVE ACTION ALLEGATIONS

33.    This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees under the FLSA. In addition to Plaintiffs, numerous former Account Executives are similarly situated to Plaintiffs with regard to their wages and claims for unpaid wages and damages, in that they were denied proper overtime compensation for at least three (3) years prior to the filing of this Complaint.

34.    Plaintiffs are representative of those other former Account Executives and are acting on behalf of their interests as well as their own interests in bringing this action. These similarly situated employees are known to Fremont and are readily identifiable, and may be located through Fremont's records.

35.    These similarly situated employees may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees under the FLSA.

## VII.    CLASS ACTION ALLEGATIONS

36.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3). The Class that Plaintiffs seek to represent is defined as follows:

> All persons who were employed by Defendants as "Account Executives" in Defendants' California locations at any time from four years prior to the date of filing of this action through May 30, 2007. "Account Executives" includes, but is not limited to, the job titles of Account Executive and Inside Sales Account Executive, but does not include Outside Sales Account Executives.

37.    From at least November 2003 until May 2007, Class Members worked as Account Executives and were encouraged, suffered, permitted, and/or required to work in excess of forty (40) hours per week and/or eight (8) hours per day without being paid proper overtime compensation by Fremont, as required by Wage Order No. 4-2001and California Labor Code §§ 510, 1194, and/or in violation of the UCL (Cal. Bus. & Prof. Code §§ 17200-17208); were denied an itemized statement of total hours worked with each payment of wages, as required by California Labor Code § 226, and/or in violation of the California Business & Professions Code §§ 17200-17208; were not provided meal periods of at least one half hour after every five hours worked in a day in violation of California Labor Code §§ 226.7, 512, and Wage Order 4-2001 § 11(A), and/or in violation of the California Business & Professions Code §§ 17200-17208; did not receive reimbursement for business expenses reasonably incurred during the course of their duties as Account Executives as required by California Labor Code § 2802, and/or in violation of the California Business & Professions Code §§ 17200-17208; and were not timely paid their total accrued compensation at time of termination of employment, in violation of California Labor Code §§ 201-203, and/or in violation of the California Business & Professions Code §§ 17200-17208. Class Representative Plaintiffs Scheid and McClanahan are members of the class they seek to represent.

38.    Numerosity.  The potential members of the class as defined are so numerous that joinder of all Class Members is impracticable.  Over 150 Account Executives employed by Fremont between November 2003 and May 2007 were denied wages and payments due to them because of Fremont's unlawful policies and practices.

39.    Commonality.  There are questions of law and fact common to the class which predominate over any questions affecting only individual members of the class, including without limitation, whether, as alleged herein, Fremont has:

a.    Encouraged, suffered, permitted, and/or required Account Executives to work in excess of forty (40) hours per week and/or eight (8) hours per day;

b.    Failed to pay Account Executives overtime wages for time worked in excess of forty (40) hours per week and/or eight (8) hours per day;

c.    Employed Account Executives in a position subject to, and not exempt from, the overtime pay requirements of California and federal law;

d.    Violated Wage Order No. 4-2001and California Labor Code §§ 510, 1194 by failing to pay Account Executives overtime compensation;

e.    Knowingly and intentionally failed to provide Account Executives with an itemized statement showing total hours worked with each payment of wages, as required by California Labor Code § 226;

f.    Violated California Labor Code §§ 226.7, 512, and Wage Order 4-2001(A) by failing to provide Account Executives with off-duty meal periods in which they were relieved of all duties;

g.    Violated California Labor Code § 2802 by failing to fully reimburse Account Executives for business expenses reasonably incurred in the course of their duties as Account Executives;

h.    Violated California Labor Code §§ 201-203, by failing to timely pay Account Executives wages due for overtime compensation at time of termination of employment;

i.    Violated California Labor Code § 1174 by failing to maintain payroll records that accurately reflected the hours worked by Account Executives;

1        j.    Violated the UCL (Cal. Bus. & Prof. Code §§ 17200-17208) by failing to pay

2    proper overtime compensation as required by California and federal law during Account Executives'

3    employment and/or when that employment terminated, by failing to reimburse Account Executives for

4    business expenses incurred in the course of their duties, by failing to provide Account Executives with

5    off-duty meal periods in which they were relieved of all duties, by failing to provide itemized

6    statements of total hours worked with each payment of wages, by failing to maintain accurate payroll

7    records showing the actual number of hours worked by Account Executives, and by failing to provide

8    Account Executives with all wages due upon discharge.

9        k.    Additionally, there are common questions of law and fact as to the proper

10    methodology for calculating damages for the above violations.

11        40.    <u>Typicality</u>.  The Class Representatives' claims are typical of the claims of the class.

12    Class Representatives were subjected to the same violations of their rights under California and federal

13    law and seek the same types of damages, restitution, and other relief on the same theories and legal

14    grounds, as those of members of the class they seek to represent.

15        41.    <u>Adequacy of Representation</u>.  Class Representative Plaintiffs Scheid and McClanahan

16    will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs' interests

17    are not in conflict with those of the Class Members.  Class Representatives' counsel are competent and

18    experienced in litigating large employment class actions and other complex litigation matters,

19    including wage and hour cases like this case.

20        42.    <u>Predominance of Common Questions</u>.  Class certification is appropriate under Fed. R.

21    Civ. P. 23(b)(3) because questions of law and fact common to Class predominate over any questions

22    affecting only individual members of the Class.  Each Class Member has been damaged and is entitled

23    to recovery by reason of Fremont's illegal policy and/or practice of permitting, encouraging and/or

24    requiring Account Executives to work in excess of forty (40) hours per week, and/or eight (8) hours

25    per day, without paying proper overtime compensation required by California and federal law; failing

26    to provide itemized statements of total hours worked with each payment of wages; failing to reimburse

27    Account Executives for business expenses; failing to provide Account Executives with off-duty meal

28    periods in which they were relieved of all duties; failing to maintain accurate payroll records showing

12071-1

13

total hours worked; and failing to pay overtime wages due at the time that each former Account Executive's employment with Fremont terminated, making Fremont liable for penalties in the form of continued compensation for up to thirty (30) days.

43.     <u>Superiority of Class Action</u>:  Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available means for the fair and efficient adjudication of this controversy.  Each Class Member has been damaged and is entitled to recovery by reason of Fremont's illegal policy and/or practice of permitting, encouraging and/or requiring Account Executives to work in excess of forty (40) hours per week, and/or eight (8) hours per day, without paying proper overtime compensation required by California and federal law; failing to provide itemized statements of total hours worked with each payment of wages; failing to reimburse Account Executives for business expenses; failing to provide Account Executives with off-duty meal periods in which they were relieved of all duties; failing to maintain accurate payroll records showing total hours worked; and failing to pay overtime wages due at the time that each former Account Executive's employment with Fremont terminated, making Fremont liable for penalties in the form of continued compensation for up to thirty (30) days.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

## VIII.     <u>COLLECTIVE ACTION CLAIM</u>

### <u>FIRST CLAIM</u>
### DENIAL OF OVERTIME COMPENSATION
### [FLSA, 29 U.S.C. §§ 207, 211(c), 216(b)]

44.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 35 above as though fully set forth herein.

45.     Under the FLSA, 29 U.S.C. § 207, Fremont was obligated to compensate Plaintiffs and similarly situated Account Executives for all hours worked in excess of 40 hours in a week.  Overtime compensation must be paid at a rate not less than one and one-half times the regular rate of pay.

46.     During the FLSA Liability Period, Plaintiffs and similarly situated Account Executives were regularly suffered, permitted, encouraged, and/or required to work in excess of forty (40) hours per week, but were not paid for such overtime work.

47.     By failing to pay overtime compensation due to Plaintiffs and similarly situated Account Executives, Fremont willfully, knowingly and/or recklessly violated the provisions of the FLSA, which require overtime compensation to non-exempt employees.

48.     As a result of Fremont's policy and practice of withholding overtime compensation, Plaintiffs and similarly situated Account Executives were damaged in that they did not received wages due to them pursuant to the FLSA.

49.     Fremont has made it difficult to account with precision for the unpaid overtime worked by their Account Executives during the FLSA Liability Period because it did not make, keep, and preserve accurate records of the actual total hours worked by such employees.

50.     Fremont's failure to retain accurate records of the actual total hours worked by Account Executives was willful and deliberate, and designed to serve their policy of unlawfully denying overtime compensation to Account Executives.

51.     As a result of the unlawful acts of Fremont, Plaintiffs and all similarly situated Account Executives were deprived of overtime compensation in the amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages (or, alternatively, interest), attorneys' fees and costs, and other compensation, pursuant to 29 U.S.C. § 216(b).  Plaintiffs and other persons formerly employed by Fremont as Account Executives who may opt into this collective action pursuant to 29 U.S.C. § 216(b) request relief as described below.

## IX.    CLASS ACTION CLAIMS

### SECOND CLAIM
### DENIAL OF OVERTIME COMPENSATION
### [Cal. Labor Code §§ 510, 1194; Wage Order No. 4-2001]

52.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 32 and 36-43 above as though fully set forth herein.

53.    Under California Labor Code § 510 and Wage Order No. 4-2001, Fremont was obligated to compensate Plaintiffs and all similarly situated Account Executives for all hours worked in excess of forty (40) hours in a work week and eight (8) hours in one work day. Overtime compensation must be paid at a rate not less than one and one-half times the regular rate of pay.

54.    During the Class Period, Plaintiffs and all similarly situated Account Executives were suffered, permitted, and/or required to work in excess of forty (40) hours per week and/or eight (8) hours in one work day during their initial training period, but were not paid for such overtime work as required by California law.

55.    As a result of Fremont's policy and practice of withholding overtime compensation, Plaintiffs and similarly situated Account Executives were damaged in that they have not received wages due to them pursuant to California wage and hour laws.

56.    Fremont has made it difficult to account with precision for the unpaid overtime worked by their Account Executives during the Class Period, because it did not make, keep, and preserve accurate records of the actual total hours worked by such employees as required for non-exempt employees by California Labor Code § 1174(d) and Wage Order No. 4-2001.

57.    Fremont's failure to retain accurate records of hours worked by Account Executives was willful and deliberate, and designed to serve its policy of unlawfully denying overtime compensation to persons employed as Account Executives.

58.    As a result of the unlawful acts of Fremont, Plaintiffs and all similarly situated Account Executives were deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts pursuant to California Labor Code § 1194, attorneys' fees, costs, and other compensation.

59.    Plaintiffs and the Class request relief as described below.

### THIRD CLAIM
### FAILURE TO FURNISH ACCURATE WAGE STATEMENTS
**[Cal. Labor Code § 226]**

60.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 32 and 36-43 above as though fully set forth herein.

61.    California Labor Code § 226 (a) requires employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, *inter alia*, the total hours worked by the employee.  California Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, inter alia, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4000).

62.    Fremont knowingly and intentionally failed to furnish each Plaintiff and Class Member with timely, itemized statements showing the total hours worked by each of them, as required by California Labor Code § 226 (a).  As a result, Fremont is liable to Plaintiffs and Class Members for the amounts provided by California Labor Code § 226 (b).

63.    Plaintiffs and the Class request relief as described below.

## FOURTH CLAIM
### UNLAWFUL FAILURE TO PROVIDE ADEQUATE MEAL PERIODS
[Cal. Labor Code §§ 226.7, 512; Wage Order No. 4-2001, §§ 11(A), (B)]

64.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 32 and 36-43 above as though fully set forth herein.

65.    Plaintiffs and similarly situated Class Members regularly worked in excess of five (5) and ten (10) hours a day without being provided a meal period of at least one half hour in which they were relieved of all duties, as required by California Labor Code §§ 226.7 and 512 and Wage Order No. 4-2001, §11(A).

66.    Because Fremont failed to provide proper meal periods, it is liable to Plaintiffs and Class Members for one (1) hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to California Labor Code § 226.7 and Wage Order Nos. 4-2001, §11(B).

67.    Plaintiffs and the Class request relief as described below.

## FIFTH CLAIM
### FAILURE TO REIMBURSE BUSINESS EXPENSES
[Cal. Labor Code § 2802]

68.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 32 and 36-43 above as though fully set forth herein.

69.    California Labor Code § 2802 requires an employer to indemnify its employees for all expenses that the employees necessarily expend as a direct result of the discharge of their employment duties or at the direction of the employer.

70.    Fremont required Account Executives to contact mortgage brokers to inform them about Fremont's loan products and generate new loans.  In order to perform this function, Account Executives incurred business expenses, including expenses for, among other things, mailings, electronic mail, cell phone calls, meals, and gifts.

71.    The cost of these expenses was incurred by Account Executives, including Plaintiffs, as a direct consequence of the discharge of their duties.  Plaintiffs and all similarly situated Account Executives are thus entitled to recover these costs under California Labor Code section 2802.

72.    As a result of Fremont's actions, Plaintiffs and others similarly situated were deprived of compensation lawfully owed, together with interest thereon.

73.    Plaintiffs and the Class request relief as described below.

## SIXTH CLAIM
### FAILURE TO PAY COMPENSATION
### AT TIME OF TERMINATION
[Cal. Labor Code §§ 201-203]

74.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 32 and 36-43 above as though fully set forth herein.

75.    California Labor Code §§ 201 and 202 require Fremont to pay all compensation due and owing to all former Account Executives at the time employment was terminated.  California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the employer is liable for penalties in the form of continued compensation for up to thirty (30) work days.

76.     Fremont willfully failed to pay Plaintiffs and Class Members all compensation due upon termination of employment as required under California Labor Code §§ 201 and 202.  As a result, Fremont is liable to such class members for penalties pursuant to California Labor Code § 203.

77.     Plaintiffs and the Class request relief as described below.

## SEVENTH CLAIM
## UNFAIR COMPETITION LAW - RESTITUTION
### [Cal. Bus. & Prof. Code §§ 17200-17208]

78.     Plaintiffs incorporate Paragraphs 1 through 32 and 36-43 as though fully set forth herein.

79.     Fremont's failures to pay legally required overtime wages, to provide off-duty meal periods, to reimburse reasonably incurred business expenses, to provide itemized statements of hours worked with payments of wages to Plaintiffs and all similarly situated Account Executives, to maintain accurate records of hours worked by Account Executives, and to pay all wages due upon discharge constitute unlawful acts prohibited by the UCL (Cal. Bus. & Prof. Code §§ 17200 - 17208).

80.     As a result of these unlawful acts, Fremont has reaped unfair benefits and illegal profits, at the expense of Plaintiffs and all similarly situated Account Executives.  Fremont must make restitution and/or be subject to other equitable relief pursuant to California Business & Professions Code § 17203.  All such remedies are cumulative of relief available under other laws, pursuant to California Business & Professions Code § 17205.

81.     Plaintiffs and the Class request relief as described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

**A.     FLSA Claims**

1.     Authorization to issue notice pursuant to 29 U.S.C. § 216(b) at the earliest possible time to all current and former Account Executives employed by Fremont during the three (3) years immediately preceding the filing of this action, informing them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit;

2.    A declaratory judgment that Fremont has violated the overtime provisions of the FLSA, 29 U.S.C. § 207, as to the Plaintiffs and similarly situated persons who opt into this action;

3.    A declaratory judgment that Fremont's violations of the FLSA were willful;

4.    An award to Plaintiffs and other similarly situated persons who opt into this action of damages in the amount of unpaid overtime compensation to be proven at trial;

5.    An award to Plaintiffs and other similarly situated persons who opt into this action of liquidated damages in an amount equal to the overtime compensation shown to be owed to them pursuant to 29 U.S.C. § 216(b); or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

6.    An award to Plaintiffs and other similarly situated persons who opt into this action of reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b); and,

7.    An award of such other and further relief as this Court may deem appropriate.

**B.    Class Claims Under California Law**

1.    Certification of the California law claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the proposed class;

2.    Class notice, pursuant to Fed. R. Civ. P. 23(c)(2), to all Account Executives in California who worked for Fremont between November 30, 2003 and May 2007 pursuant to the statute of limitations on the UCL claims, California Business & Professions Code § 17208;

3.    A declaratory judgment that Fremont has violated the overtime provisions of California Labor Code § 510 and Wage Order No. 4-2001 as to the Plaintiffs and the Class Members;

4.    A declaratory judgment that Fremont has knowingly and intentionally violated California Labor Code § 226 by failing to provide Plaintiffs and the Class Members with itemized statements of total hours worked with each payment of wages;

5.    A declaratory judgment that as to Plaintiffs and the Class Members, Fremont has violated California Labor Code § 226.7 by failing to provide them a meal period of at least one half hour in which they were relieved of all duties after they had worked in excess of five (5) and ten (10) hours a day;

6.    A declaratory judgment that as to Plaintiffs and the Class Members, Fremont has violated California Labor Code § 2802 by failing to reimburse them for business expenses reasonably incurred in the course of their duties as Account Executives;

7.    A declaratory judgment that as to Plaintiffs and the Class Members, Fremont has violated California Labor Code §§ 201-203 for willful failure to pay compensation at the time of termination of employment, resulting in unpaid waiting time penalties;

8.    A declaratory judgment that Fremont has violated the UCL (Cal. Bus. & Prof. Code §§ 17200-17208) by failing to pay legally required overtime wages, to provide meal periods, to reimburse reasonably incurred business expenses, to provide itemized statements of hours worked with payments of wages to Plaintiffs and all similarly situated Account Executives, to maintain accurate records of hours worked by Account Executives, and to pay all wages due upon discharge, as required by California law;

9.    An award to Class Representative Plaintiffs and the Class Members of damages in the amount of unpaid overtime compensation, including interest thereon, and penalties subject to proof at trial;

10.    An award to Class Representative Plaintiffs and the Class Members for reimbursement of business expenses pursuant to California Labor Code § 2802;

11.    An award to Class Representative Plaintiffs and the Class Members of one (1) hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to California Labor Code § 226.7 and Wage Order Nos. 4-2001, §11(B);

12.    An award of damages to Class Representative Plaintiffs and the Class Members for Fremont's failure to provide accurate itemized wage statements, pursuant to California Labor Code § 226(a);

13.    An award of payments due to Class Representative Plaintiffs and the Class Members, all of whom have left Fremont's employ, as waiting time penalties, pursuant to California Labor Code § 203;

14.    An order requiring Fremont to pay restitution of all amounts owed to Class Representative Plaintiffs and the Class Members for Fremont's failures to pay legally required

overtime wages and interest thereon, to provide meal periods and interest thereon, to reimburse reasonably incurred business expenses, to provide itemized statements of hours worked with payments of wages to Plaintiffs and all similarly situated Account Executives, to maintain accurate payroll records showing the actual number of hours worked by Account Executives, and to pay all wages due upon discharge, in an amount according to proof, pursuant to California Business & Professions Code § 17203;

15.    An award to Class Representative Plaintiffs and the Class Members of reasonable attorneys' fees and costs, pursuant to California Civil Procedure Code § 1021.5, California Labor Code §§ 226,  226.7, 1194, 2802, and/or other applicable law; and,

16.    An award of such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury to the extent authorized by law.

Dated:  November 30, 2007          Respectfully submitted,


ROBERTA L. STEELE, CA Bar No. 188198
LAURA L. HO, CA Bar No. 173179
JOSEPH E. JARAMILLO, CA Bar No. 178566
GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
    DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510)  763-9800
(510)  835-1417 (fax)

12071-1

COMPLAINT